IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                              RESPONDENT

vs.                                    Criminal No. 4:15-cr-40011
                                       Civil No. 4:18-cv-4167

LACORTNEY D. SANDERS                                                       MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant is Lacortney D. Sanders ("Sanders") who is proceeding *pro se*. On December 27, 2018, Sanders filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. ECF No. 47. After being directed by the Court to respond, the Government filed a response to this Motion. ECF No. 54.

The Motion was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case. The Court has reviewed the Motion and the response; and based upon that review, the Court recommends this Motion be **DENIED**.

**1.     Procedural Background**:[1]

On February 25, 2015, Sanders was named in a two count Indictment filed in the Western District of Arkansas, El Dorado Division. ECF No. 1. Count One charged Sanders with conspiracy distribute more than 50 grams of actual methamphetamine and Count Two charged him with distribution of more than 50 grams of methamphetamine. *Id.*

---

[1]The procedural background is taken from the Motion and Response filed in this matter as well as the Court's docket in this matter.

On January 25, 2017, Sanders appeared with counsel[2] before the Honorable Susan O. Hickey for a change of plea hearing. ECF No. 31. A written plea agreement was presented to the Court that set forth the terms of Sanders's agreement to plead guilty to Count Two of the Indictment, distribution of more than 50 grams of actual methamphetamine. ECF No. 32. The Court accepted Sanders's plea and ordered a Presentence Investigation Report ("PSR").

Subsequently, the Probation Office issued Sanders's final PSR. ECF No. 38. Pursuant to the United States Sentencing Guidelines ("USSG"), the PSR found Sanders's base offense level to be 32. *Id* at ¶ 44. Sanders was determined to be an organizer or leader of the criminal activity and was assessed a 4 level increase in the offense lever. *Id* at ¶ 47. He was also assessed a 3 level decrease for his acceptance of responsibility. *Id* at ¶¶ 51-52. This resulted in a Total Offense Level of 33. *Id* at ¶¶ 53. Sanders's criminal history score was determined to be 2, which resulted in a criminal history category of II. *Id.* at ¶ 72. Sanders's statutory term of imprisonment was a minimum of 10 years up to life, and his advisory USSG sentencing range was 151 to 188 months imprisonment. *Id.* at ¶¶ 105-106.

Sanders, through counsel, filed the following objections to the PSR and its recommendations:

• "That the defendant objects to paragraph 12 of the PSR which suggests that the criminal prosecution of Christopher Xavier Perry in 2014-2015 is a 'related case' of the prosecution of the defendant."

• "That the defendant is mindful of paragraph 15 of the plea agreement which acknowledges that at the sentencing hearing, the United States is permitted to bring to the Court's attention, all relevant information with respect to the defendant's background, character, and conduct. Nevertheless, the defendant objects to paragraphs 20-39 of the PSR which describes alleged conduct of the defendant and unnamed other individuals which the PSR treats as relevant conduct in determining

---

[2]Sanders was represented by retained counsel, Mr. Jamie Pratt of El Dorado, Arkansas, at the change of plea and sentencing in this matter.

the guideline range. Defendant disagrees that the events described in paragraphs 20-39 constitute relevant conduct."

- "That the defendant objects to paragraph 44 of the PSR which sets the base offense level at 32. This calculation is defined in paragraphs 38 and 39 of the PSR. The defendant has pled guilty to delivery of 72.51 grams of actual methamphetamine. The guideline for this offense is found in USSG § 2D1.1. That section provides that an offense involving more than at least 50 grams but less than 150 grams of actual methamphetamine has a base offense level of 30. USSG § 2D1.1(c)(5)."

- "That the defendant objects to paragraph 47 of the PSR which provides for a 2 level increase based on the defendant being an organizer, leader, manager, or supervisor in the criminal activity."[3]

- "That based on these objections the total offense level (paragraph 53 of the PSR) should be 27 and the guideline imprisonment range (paragraph 105 of the PSR) should be 78-97 months."

On June 18, 2018, Sanders appeared before the Honorable Susan O. Hickey for sentencing. ECF No. 43. The Court explained the purpose of the hearing and Sanders's rights. ECF No. 51, pp. 3-4. The statutory sentence range was explained. *Id.* at p. 7.

The Court next addressed the parties's objections to the PSR. The Court denied the Government's first and second objections and determine that ¶ 47 of the PSR should reflect a 2 level increase, rather than a 4 level increase for Sanders's role in the offense. All of Sanders's objections were denied, except for Objection No. 3 which was withdrawn. The resulting USSG total offense level was therefore 31, Criminal History Category II, and the recommended sentence of imprisonment was 121-151 months. ECF No. 51, p. 18.

At the conclusion of the hearing, the Court sentenced Sanders to 121 months imprisonment, 5 years supervised release, and a $100.00 special assessment. ECF No. 45. No fine was imposed.

---

[3] The Court notes that the PSR ¶ 47 initially provided for a 2 level increase for Sanders's role in the offense. Based on an objection from the Government the final PSR had a 4 level increase based on the role in the offense.

The judgment was entered on June 20, 2018. *Id.* Sanders waived his right to directly appeal his conviction and sentence as a part of the Plea Agreement. ECF No. 32 ¶ 7.

**2.     Instant Motion**:

On December 27, 2018, Sanders filed the instant *pro se* Motion under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence, along with a memorandum brief in support thereof. ECF No. 47. The Court appointed counsel to represent Sanders and directed the United States to file a response to the Motion to Vacate, Set Aside, or Correct Sentence. ECF No.48. Appointed counsel filed a notice that no supplement to the Motion would be submitted. ECF No. 53. Sanders raised the following issues of ineffective assistance of counsel in this Motion:

   a. Counsel failed to properly inform Sanders of the consequences of his guilty plea;

   b. Counsel failed to object to the use of relevant conduct at sentencing; and

   c. Counsel failed to adequately consult with Sanders about appeal.

The Government responded (ECF No. 54), and this Motion is now ripe for consideration.

**3.     Applicable Law:**

A § 2255 motion is fundamentally different from a direct appeal. The Court will not reconsider an issue, which was decided on direct appeal, in a motion to vacate pursuant to § 2255. *See United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir.1992) ( "Claims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255 .").

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir.

1996).

As noted, Sanders's Motion raises three claims of ineffective assistance of counsel.

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on an ineffective assistance of counsel claim, under *Strickland*, a movant must show: (1) his "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence," and (2) "the deficient performance prejudiced [his] defense." *See Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (quoting *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir.1995)). When considering the first element, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." *Toledo*, 581 F.3d at 680 (quoting *Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.1996) (citing *Strickland v. Washington*, 466 U.S. at 689)). "The burden of proving ineffective assistance of counsel rests with the defendant." *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003)(citing *United States v Cronic*, 466 U.S. 648, 658 (1984)).

Under the first prong of the *Strickland* test, the Court must consider counsel's performance objectively and gauge whether it was reasonable "under prevailing professional norms" and "considering all the circumstances." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) (citations omitted). The Court should examine counsel's challenged conduct at the time of his representation of the defendant and avoid making judgments based on hindsight. *See id.* There is typically no basis for finding a denial of effective counsel unless a defendant can show specific errors that "undermined the reliability of the finding of guilt. . . ." *White,* 341 F.3d at 678. If, however,

"counsel completely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights making the adversary process presumptively unreliable [and no showing of prejudice is required]." *See id.*

If the Court finds deficient counsel and thus must consider the second prong, prejudice, a defendant must establish "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice can only be found if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992).

**4.** **Discussion**:

**a. Sanders Was Properly Informed of the Consequences of his Guilty Plea**: Sanders argues that his counsel failed to properly inform him of the consequences of entering into the Plea Agreement. According to Sanders, Mr. Pratt his trial counsel, originally told him he would receive a sentence of 51 months if he pled guilty and later changed that to a probable 78 month period of incarceration. He claims he was not

> informed of the contents of the plea as it pertains to the statements that the prosecutor and judge could still determine a different sentence. . . I believed I had no choice, so I signed the agreement. At sentencing I was totally shocked at what the judge said and did.

ECF No. 47, p. 4. Contrary to Sanders's assertions, the record shows that his plea was voluntary and he was advised of the possible sentences at the earliest stage of this proceeding and stated unequivocally at his change of plea that he understood the consequences of pleading guilty, including the potential sentence.

A plea of guilty is valid if its voluntarily, knowingly, and intelligently entered into with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Strumpf*, 545 U.S. 175, 183 (2005). A defendant's in-court statements that his plea is entered into knowingly and voluntarily are accorded a presumption of correctness. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Once a person has entered a guilty plea, any "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." 431 U.S. at 74.

Sanders executed a written Plea Agreement with the Government. ECF No. 32. In the Plea Agreement, he acknowledges several things, including: that he had discussed facts of the case with this counsel (ECF No. 32 ¶ 2); he had committed each of the elements of the crime,(ECF No. 32 ¶ 2); that he understood the possible sentence which could be imposed (ECF No. 32 ¶ 10), that he was waiving his right to appeal the sentence so long as it was within the statutory maximum, (ECF No. 32 ¶ 7), he knew that all relevant conduct would be considered (ECF No. 32 ¶ 15), and that there was no specific sentence promised him (ECF No. 32 ¶ 14). Most importantly to the issue he raises here, he specifically acknowledged he had read and understood the Plea agreement, he was not under any sort of influence or coercion, no promises had been made other than the Plea Agreement, and he was satisfied with his trial counsel. ECF No. 32 ¶ 24.

Further, at the change of plea hearing, Judge Hickey specifically inquired of Sanders directly about all of those matter he now complains about. ECF No. 50. After Judge Hickey described the charge he was pleading guilty to and the possible penalty, the following transpired:

> THE COURT: Now, that is the charge that you're pleading guilty to and the statutory penalty. Do you understand both of those?


>THE DEFENDANT: Yes, ma'am.

ECF No 50, p. 4. The Court then inquired as to what Sanders believed the possible sentence would be:

> THE COURT: I want you to also understand that at this point in time, I cannot tell you what your guideline range will be. Mr. Sanders, I don't know anything about you, and until I receive the pre-sentence report, I'm not going to know anything about you. Now, Mr. Pratt may be able to give you an idea what he believes the guideline range will be, but that is just an educated guess. Until he receives that pre-sentence report, he's not going to know for sure what your guideline range will be, either. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

ECF No. 50, p. 7. The Court specifically questioned Sanders about his understanding of the Plea Agreement. The following occurred:

> THE COURT: Okay. Okay. Now, Mr. Sanders, did you read this plea agreement? Have you read -- gone over it with --
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. And Mr. Pratt and you went over it?
>
> MR. PRATT: Yes.
>
> THE COURT: Yes. Mr. Pratt went over it and explained this plea agreement to you?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. And you understand this plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> . . .
>
> THE COURT: You are giving up the right to directly appeal both the conviction and sentence you receive in this case. You are also giving up the right to collaterally attack the sentence and conviction except under certain circumstances. And you're giving up -- no, that's the only – So these are constitutional rights that you have and

you are giving them up in this document; do you understand that?

THE DEFENDANT: Yes, ma'am.

[Talking with his attorney]

THE COURT: Do you understand that in this document you are giving up those rights?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you willing to do it?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you sure?

THE DEFENDANT: Yes, ma'am.

ECF No. 50, pp. 13-14.

Both the written Plea Agreement and Sanders's own statement at the change of plea hearing demostrate his first claim for relief, that his trial counsel allowed him to plead guilty without an understanding of the consequences, has no basis.

This Claim should be denied.

**b. Trial Counsel did object to the use of relevant conduct at sentencing:** Sanders next asserts his trial counsel failed to object to the use of relevant conduct at sentencing. This claim fails for two reasons. First, Sanders was specifically informed at the change of plea that "relevant conduct" including "other buys" could be used by the Court in determining his sentence. Sanders in fact asked a question of the Court about relevant conduct:

THE DEFENDANT: What did he mean about the relevant conduct?

THE COURT: Okay. That means that the court can take into consideration other conduct that you were involved in that were probably part of what we call relevant

>conduct, which is usually part of the same scheme or plan. In other words, similar type of conduct that you were involved in. So they can take that not consideration, and that will be presented in the pre-sentence report, and I can consider that in making my determination of what your sentence will be.
>
>THE DEFENDANT: Okay.
>
>THE COURT: That's what relevant conduct is.
>
>THE DEFENDANT: Okay.
>
>THE COURT: Okay. So in other words, you're not limited to just this one buy. The court can look at your other conduct during this time period.
>
>THE DEFENDANT: Okay.
>
>THE COURT: Okay. Do you understand that?
>
>THE DEFENDANT: Yes, ma'am.

ECF No. 50, pp. 12-13.

More importantly, Sanders's trial counsel DID object to certain facts being considered relevant conduct. In a written Response to Presentence Report, trial counsel specifically objected to " to paragraphs 20-39 of the PSR which describes alleged conduct of the defendant and unnamed other individuals which the PSR treats as relevant conduct in determining the guideline range. Defendant disagrees that the events described in paragraphs 20-39 constitutes relevant conduct." ECF No. 37, p. 1. The paragraphs of the PSR described other buys and other individuals involved in the same conduct as Sanders. The Court, as noted above considered and denied that objection at sentencing. However, the Court did rule in Sanders's favor in denying the Government's objection regarding his role in the offense, limiting the increase in total offense level to 2 levels rather than the Government's request for a 4 level increase.   Trial counsel in fact objected to the Courts consideration of relevant conduct. The denial of that objection by the Court does not make counsel's

action ineffective.

This Claim should be denied.

**c. Sanders Fails to Show he Requested Trial Counsel File a Notice of Appeal**: Sanders lastly claims his trial counsel failed to "adequately consult" with him about a possible appeal. This claim is without merit. First, I note Sanders in both the written Plea Agreement (ECF No. 32 ¶ 7) and verbally to the Court at the change of plea hearing (ECF No. 50, p. 14) acknowledged he was giving up his rights to a direct appeal except in very narrow circumstances, which are not present here. Despite these waivers, the Court still informed Sanders of the fourteen (14) day limit in which to file a notice of appeal. ECF No. 51, p. 31.

As an initial matter, the Court recognizes that where an attorney has consulted with his client about an appeal, he will not be found ineffective unless he fails to follow the "express instructions with respect to an appeal." *Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000). For such a claim to succeed, however, the client must show he instructed his counsel to file an appeal. *See Hollis v. United States,* 687 F.2d 257, 259 (8th Cir. 1982). Based upon this standard and for the following reasons, the Court finds Sanders has not presented sufficient evidence demonstrating he directed his trial counsel to appeal his sentence.

Sanders merely alleges his trial counsel "failed to consult" with him about an appeal. He does no make any claim that he expressly directed trial counsel to file a notice of appeal. Assuming trial counsel did not consult with Sanders at all regarding appeal after the sentencing, his claim still fails. Here, Sanders was sentenced at the low end of the guideline range and *only one month above the statutory minimum*. Sanders acknowledge in the written Plea Agreement and to the Court in an open proceeding he knowingly and voluntarily agreed to waive his right to directly appeal his

sentence except in the case his sentence exceeded the statutory maximum. Trial counsel could have easily concluded that Sanders would not want to appeal under those circumstances, especially given the potential negative consequences should he file a notice of appeal.

> [A] defendant generally has nothing to gain by filing an appeal on a waived ground. He does, however have something to lose. In many plea agreements, the Government makes concessions in exchange for a defendant's guilty plea and related waivers, such as dismissing counts or agreeing not to bring additional charges. A defendant's breach of the promise not to appeal or seek collateral review places the Government's concessions in jeopardy. The Government could seek to reinstate dismissed counts or bring additional charges related to the defendant's underlying acts. In addition, bringing a waived appeal or collateral attack could demonstrate to the court that the defendant has not accepted responsibility and thereby allow the court to rescind a sentencing-guidelines reduction under USSG § 3E1.1.

*Witthar v. United States*, 793 F.3d 920, 925 (8th Cir. 2015) (internal citations omitted).

In this case, Sanders has failed to demonstrate that he meets the test articulated in. *Flores-Ortega.* Because a rational defendant in his situation would not have desired an appeal, and because Sanders did not expressly demonstrate an interest in an appeal to trial counsel, this claim should be denied.

**5.   Conclusion**:

All of Sanders's claims are based on alleged ineffective assistance of counsel. He has wholly failed to establish the first prong of *Strickland,* "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence," for any of these claims. Accordingly, the Court has no need to address the prejudice prong here. The Motion should be in all respects denied.

**6.   Recommendation**:

Accordingly, based on the foregoing, the Court recommends the instant Motion (ECF No.

297) be **DENIED** and dismissed with prejudice.  No evidentiary hearing is necessary in this matter. The Court further recommends no Certificate of Appealability issue in this matter.

**The Parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The Parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**  See  *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

**DATED** this **2nd day of August 2019.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE